AO 106 (Rev. 01/09) Application for a Search Warrant

CLERK'S OFFICE U.S. DISTRICT COURT
AT ABINGDON, VA
FILED

JUL - 1 2020

JULIA C. DUDLEY, CLERK
BY: /s/ C. Surber
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
для the
Western District of Virginia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )     Case No. 1:20mj94
VERIZON WIRELESS )
RE: TARGET # 276-685-7473 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Western_____ District of _____Virginia_____ *(identify the person or describe property to be searched and give its location):* Cellular telephone number (276) 685-7473 stored on premises controlled by Verizon Wireless, as more fully described in Attachment A (to be searched from the date of execution of the search warrant for a period not to exceed 30 days).

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___21___ U.S.C. § _846/841(a)(1)_ , and the application is based on these
facts:                                                               and/or 841(a)(1)
See Affidavit in Support of an Application for a Search Warrant. I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the DEA.

☑ Continued on the attached sheet.

☑ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Brian Snedeker, Special Agent
*Printed name and title*

Sworn to before me ~~and signed~~ *telephonically* ~~in my presence~~.

Date: 7/1/20

*Judge's signature*

City and state: Abingdon, Virginia                    Pamela Meade Sargent, USMJ
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1.    The cellular telephone assigned call number **276-685-7473** (the "**Target Cell Phone**"), whose wireless service provider (or parent wireless service provider) is Verizon Wireless, a company headquartered 180 Washington Valley Road, Bedminster, NJ 07921.

2.    Information about the location of the **Target Cell Phone** that is within the possession, custody, or control of Verizon Wireless.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the **Target Cell Phone** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **Target Cell Phone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon Wireless, Verizon Wireless is required to disclose the Location Information to the government. In addition, Verizon Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon Wireless services, including by initiating a signal to determine the location of the **Target Cell Phone** on Verizon Wireless network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **276-685-7473** ATTACHED TO VERIZON WIRELESS | Case No. 1:20-MJ-_____<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Brian Snedeker, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **276-685-7473** (hereinafter referred to as "**Target Cell Phone**"), whose service provider (or parent service provider as the service may have been established through a wireless service reseller) is Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921. Through a narcotics investigation, it has been discovered that the **Target Cell Phone** is a cellular telephone being used by JAYSON FIRESTONE. The **Target Cell Phone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed for approximately (29) years. During my employment I have received comprehensive classroom training from the Drug Enforcement Administration in specialized narcotic investigative matters including but not limited to drug interdiction, drug detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and organizations involving the smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances and controlled substance precursors. During my employment as a Special Agent with the Drug Enforcement Administration, I have participated in the investigations and subsequent arrests of hundreds of individuals involved with the trafficking of methamphetamine (a Schedule II controlled substance). To successfully conduct these investigations, I (along with other federal, state, and local officers involved in said investigations) have utilized a variety of investigative techniques and resources including physical and electronic surveillance as well as various types of sources of information including informants/cooperating individuals. Through these investigations, my training and experience, and conversations with other experienced Special Agents and law enforcement personnel, I have become familiar with the methods used by traffickers to smuggle, safeguard, and distribute methamphetamine and collect and launder related proceeds. I am aware of the sophisticated tactics they routinely use to attempt to thwart any investigation of their methamphetamine trafficking activities and organizations. My knowledge of these tactics, which include the utilization of numerous different cellular telephones (often unregistered or listed in other persons' names), counter surveillance, elaborately planned distribution schemes tied to legitimate businesses, false or fictitious identities, and coded communications and conversations, has been particularly useful and relevant to this investigation. The facts in this

affidavit come from my personal observations, my training and experience, information obtained from other special agents and law enforcement/probation officers, and information from individual(s) involved with methamphetamine trafficking. Any reference to the gender of any unnamed person within this affidavit does not necessarily reflect the true gender of said person. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3. Based on the facts set forth in this affidavit, I submit there is probable cause to believe that violations of 21 U.S.C. §841(a)(1), distribution and possession with the intent to distribute methamphetamine, a Schedule II controlled substance; 21 U.S.C. §846, conspiracy to distribute and to possess with intent to distribute methamphetamine, a Schedule II controlled substance; and 21 U.S.C. §843(b), use of a communication facility to commit or facilitate the commission of a Title 21, United States Code, felony offense, have been committed, are being committed, and will be committed by JAYSON FIRESTONE, and others known and unknown. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, lead to the identification of individuals who are engaged in the commission of these offenses, and assist law enforcement in positively identifying JAYSON FIRESTONE's location when he is within the Western District of Virginia so that a 4th Amendment waiver search may be performed upon JAYSON FIRESTONE (JAYSON FIRESTONE is currently on state supervised probation and subject to search by law enforcement and probation officers) for the purpose of identifying and seizing documentary evidence and distribution paraphernalia/equipment related to these offenses.

3

## PROBABLE CAUSE

4.  This affidavit is intended to show that there is sufficient probable cause for the requested search warrant and does not purport to set forth all of my knowledge of this matter. The facts set forth in this affidavit are known to me as a result of my investigation of JAYSON FIRESTONE and information provided to me by other law enforcement/probation officers.

5.  During October 2019, law enforcement performed a 4th Amendment waiver search of JAYSON FIRESTONE at his residence located within the Western District of Virginia. As a result of the search, approximately $500 United States Currency (USC) was found on JAYSON FIRESTONE's person and a plastic bag containing a white crystalline substance was located under the sink in the bathroom nearest JAYSON FIRESTONE's bedroom (JAYSON FIRESTONE lived in a home with his mother). The crystalline substance was chemically field tested by officers with positive results for methamphetamine. Digital scales were also found inside a motor vehicle (parked on the premises) that JAYSON FIRESTONE was known to routinely operate. After having been Mirandized, JAYSON FIRESTONE admitted being a multi-ounce methamphetamine trafficker who made a weekly profit of between $1,000 - $2500.

6.  On June 23, 2020, law enforcement officers performed a 4th Amendment waiver search at JAYSON FIRESTONE's current residence within the Western District of Virginia. JAYSON FIRESTONE was not present when the search was conducted. As a result of the search, numerous items were seized including multiple plastic containers containing a crystalline and/or white substance/residue. Other items seized included Western Union wire (cash) transfer receipts. Two of the Western Union wire transfer receipts were dated June 21,

4

2020 and both listed the sender as JAYSON FIRESTONE with the recipient designated as an individual (hereafter referred to as "TRAFFICKER A") in Georgia (the money was to be picked up by TRAFFICKER A in Georgia). One of the wire transfers was for $3,500 and the other was for $4,000. One of the receipts listed the **Target Cell Phone** along with JAYSON FIRESTONE's name under the section listed as "Sender/Remitente".

7. During June 2020, a reliable confidential source (hereafter referred to as "CS") advised law enforcement that JAYSON FIRESTONE is a methamphetamine trafficker who uses TRAFFICKER A as his source of supply. The CS further advised that TRAFFICKER A obtains methamphetamine in Georgia. The CS has provided information and assistance to law enforcement that led to the seizure of more than (2) pounds of methamphetamine during 2020.

8. A review by this affiant of TRAFFICKER A's criminal history revealed the following (not all inclusive):

- 2011 – conviction for possession of methamphetamine
- 2012 – conviction for possession of methamphetamine
- 2014 – convictions for trafficking in methamphetamine, possession of methamphetamine, and principal to manufacture of methamphetamine
- 2019 – conviction for possession of methamphetamine (within the Western District of Virginia)

9. JAYSON FIRESTONE's state probation officer has advised this affiant that FIRESTONE called from the **Target Cell Phone** on June 24, 2020 and left a message for the probation officer.

5

10. Based on my training, experience, and knowledge of this case, I am aware that drug traffickers possess and utilize a cellular or multiple cellular telephones to conduct drug trafficking related business. Drug traffickers use cell phones to communicate through voice calls, text messages and smart phone messaging applications. Your affiant is also aware that drug traffickers routinely travel for the purposes of acquiring, transporting, and distributing drugs as well as collecting related drug proceeds, and they often utilize their cell phones by accessing map applications to locate meeting places and to communicate with suppliers and customers while enroute to meeting locations.

11. In addition, there is probable cause to believe that the location of the **Target Cell Phone** will constitute evidence of the offenses listed in Paragraph 3. Identifying the location of the **Target Cell Phone** will assist in revealing locations from which JAYSON FIRESTONE is obtaining methamphetamine and then maintaining and/or redistributing the methamphetamine within the Western District of Virginia. It may also reveal locations that may be serving as stash houses or transshipment points for bulk methamphetamine as well as locations at which JAYSON FIRESTONE is collecting methamphetamine proceeds from his sub-distributors/customers. JAYSON FIRESTONE would be a difficult target in reference to routine surveillance as law enforcement has been made aware that he drives motor vehicles registered to other persons and he has been using various hotels/motels within the Western District of Virginia. The use of GPS information obtained from the **Target Cell Phone** would assist law enforcement in the safe and discreet surveillance of JAYSON FIRESTONE as he meets his methamphetamine source(s) of supply and sub-distributors/customers, and assist in identifying JAYSON FIRESTONE's location when he is within the Western District of Virginia so that law enforcement may have the opportunity to perform a 4th Amendment

6

waiver search of JAYSON FIRSTONE's person for the purpose of identifying and seizing documentary evidence and distribution paraphernalia/equipment related to the distribution of methamphetamine and/or conspiracy to distribute methamphetamine.

12. In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

13. Based on my training and experience, I know that Verizon Wireless can collect E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on Verizon Wireless network or with such other reference points as may be reasonably available.

7

14. Based on my training and experience, I know that Verizon Wireless can collect cell-site data about the **Target Cell Phone**.

## AUTHORIZATION REQUEST

15. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

16. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cell Phone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

17. I further request that the Court direct Verizon Wireless to disclose to the government any information described in Attachment B that is within the possession, custody, or control of

8

Verizon Wireless. I also request that the Court direct Verizon Wireless to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon Wireless services, including by initiating a signal to determine the location of the **Target Cell Phone** on Verizon Wireless network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

18. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

19. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Brian Snedeker
Special Agent
Drug Enforcement Administration

9

Subscribed and sworn to before me on July 1st, 2020 *telephonically*

/s/ Pamela Meade Sargent
Honorable Pamela Meade Sargent
UNITED STATES MAGISTRATE JUDGE

Reviewed by:

| Roy F. Evans | 07/01/2020 |
|---|---|
| Special Assistant United States Attorney | Date |